The charge in this indictment was no more than a misdemeanor at common law, though an aggravated one, as it still continues in relation to all but the colored population. But the form of the indictment constantly laid the intent to be to commit the offense "violently and (144) against the will" of the female, as appears from the precedents referred to by the Attorney-General. The late act of Assembly having elevated the offense to a capital felony, affords an additional reason for maintaining and adhering to the established forms, for if so much precision is required to put a misdemeanor in the shape of an indictable offense, a fortiori should it be observed when the same offense is made capital, for the policy of the law will sometimes overlook exceptions made to an indictment for misdemeanor, which, nevertheless, it will sustain in favorem vitae. In an indictment for an assault with intent to murder, it is essential to state the intent to be "feloniously, willfully, and of his malice aforethought, to kill and murder," because these are the characteristics of the crime designed to be perpetrated; and for the same reason, and in this case a stronger one, the essential qualities of the crime should be laid in an indictment for attempting it. There is indeed a case, 3 Johns., 505, where the indictment was sustained, which charged the intent to commit a murder, on the ground that it followed the words of the statute. But in that case the statute did not raise the offense beyond its original degree of misdemeanor, but only aggravated the punishment by imprisonment in the State's Prison. For this omission, therefore, I think this indictment is defective.
It appears to me that the act of 1793, ch. 381, extending the trial by jury to slaves, and directing the jury to be composed of owners of slaves, is not repealed by any subsequent law. A twofold consideration dictated the policy of this law, the force of which remains unimpaired by the extension of additional privileges to slaves. It was intended to surround the life of the slave with additional safeguards, and more effectually to protect the property of the owner, by infusing into the trial that temperate and impartial feeling which would probably exist in persons owning the same sort of property. *Page 94 
(145) That the master would have assurance of an equitable trial by persons who had property constantly exposed to similar accusations, and who would not wantonly sacrifice the life of a slave, but yield it only to a sense of justice, daily experience is sufficient to convince us. The property of a man is more secure when he cannot be deprived of it except by a jury, part of whom, at least, have the like kind of property to lose. And this reason, it seems to me, continues to operate with full force, notwithstanding the many humane and valuable provisions which have been subsequently made for the trial of slaves. I am of opinion that the judgment should be arrested.
Judgment affirmed.
Cited: S. v. Arthur, 13 N.C. 217; S. v. Gallimon, 24 N.C. 372; S. v.Powell, 106 N.C. 638; S. v. Peak, 130 N.C. 717; S. v. Marsh, 132 N.C. 1002. *Page 95